**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

| | |
|---|---|
| **FAUSTO HERRERA JUAREZ** | **CASE NO. 6:26-CV-00042 SEC P** |
| **VERSUS** | **JUDGE JERRY EDWARDS** |
| **BRIAN PATTERSON, ET AL** | **MAGISTRATE JUDGE LEBLANC** |

# MEMORANDUM RULING AND ORDER

Before the Court are the original and amended petitions for writ of habeas corpus filed by Fausto Herrera Juarez, through counsel, pursuant to 28 U.S.C. § 2241. Docs. 1, 20. For the reasons which follow, the habeas petition is **GRANTED**.

## I. FACTUAL BACKGROUND

Petitioner Fausto Herrera Juarez, a native and citizen of Guatemala, was first apprehended by U.S. Border Patrol on May 10, 2016, and subsequently placed in expedited removal proceedings pursuant to section 235(b) of the Immigration and Nationality Act (INA). *See* Declaration of Charles Ward, Assistant Field Office Director, Department of Homeland Security/Immigration and Customs Enforcement ("DHS/ICE") Enforcement and Removal Operations ("ERO") division, doc. 15-1, ¶¶ 3-4. At that time, Petitioner was issued a Form I-860, Notice and Order of Expedited Removal, whereby he was charged as being an inadmissible alien under section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act (INA). *Id*. at ¶ 3. On May 13, 2016, Petitioner was removed to Guatemala. *Id*. at ¶ 5.

"Afraid for [his] life and scared that it was only a matter of time before [his] previous attackers would find out that [he] was back in Guatemala," he reentered the United States on or

about May 22, 2016. Doc. 1-2, ¶ 6. He subsequently settled in Maryland where he lives with his wife and two sons, both born in the United States. *Id*. at ¶ 7.

On November 12, 2019, he was encountered by ERO after completing his jail sentence for a Driving Under the Influence (DUI) conviction. Doc. 15-1, ¶ 6. He was served with Form I-871, Notice of Intent/Decision to Reinstate Prior Order of Removal and detained. *Id*. at ¶ 6. On February 18, 2020, an immigration court granted Petitioner's request for withholding of removal under INA 241(b)(3) based on political persecution. *Id*. at ¶ 7; *see also* Declaration of Fausto Herrea Juarez, doc. 1-2, ¶ 2. On March 3, 2020, ERO released the Petitioner from ICE custody pursuant to an Order of Supervision (OSUP). *Id*. at ¶ 8.

On May 6, 2025, ICE apprehended Petitioner following his release from the Baltimore Central Booking Intake Center and sought to execute his removal to a third country. *Id*. at ¶ 9. ERO electronic case notes indicate that a Form I-241, Request for Acceptance of Alien, was issued to Mexico on May 6, 2025, followed by requests to Panama, Mexico, and Nicaragua on May 25, 2025. Id. at ¶ 10. A June 13, 2025 follow-up confirmed that none of the nations responded. *Id*. at ¶ 12. On June 15, 2025, Petitioner was transferred to the Pine Prairie ICE Processing Center. *Id*. at ¶ 13.

Following a 180-day custody review on December 17, 2025, ERO authorized continued detention and served Petitioner with a Decision to Continue Detention. *Id*. at ¶ 14. On January 17, 2026, following a third country of removal screening, Mexico was excluded as a potential third country of removal. ¶. at § 15.

Petitioner's case was elevated to the ICE Removal Management Division (RMD) which is located at ICE Headquarters in Washington, D.C.[1] On March 9, 2026, the Democratic Republic of the Congo (DRC) accepted Petitioner for removal under a third-country agreement and ICE scheduled his removal for April 15, 2026. *Id*. at ¶ 4-6. Petitioner filed a motion for temporary restraining order (TRO) to enjoin the removal (doc. 21) which the District Court denied for lack of jurisdiction on April 10, 2026 (doc. 24). ICE then transferred Petitioner to the Alexandria Staging Facility for removal to the DRC. *See* doc. 26, p. 1.

On April 14, 2026, Petitioner filed a petition for review in the United States Court of Appeals for the Fourth Circuit challenging both the reinstatement order and the designated removal to the DRC. *See Herrera Juarez v. Blanche*, No. 26-1440, docs. 2, 3 (4th Cir. Apr. 14, 2026). The Fourth Circuit issued an immediate a 14-day temporary administrative stay of removal, preventing his scheduled flight. *See Herrera Juarez v. Blanche,* No. 26-1440, doc. 7 (4th Cir. Apr. 14, 2026). Petitioner was later transferred to the Winn Correctional Center in Winnfield, Louisiana. On April 28, 2026, the Fourth Circuit granted a full stay of Petitioner's removal pending resolution of his petition for review, finding a likelihood of success on the merits of his due process claim. *See* Stay Order, doc. 26-1.

On September 9, 2026, the Board of Immigration Appeals ("BIA") remanded Petitioner's appeal of the denial of his motion to reopen back to the immigration court. *See* Remand Order, doc. 36-2. At present, Petitioner remains subject to a stay of removal issued by the United States Court of Appeals for the Fourth Circuit and his petition for review is still held in abeyance as of

---

[1] The RMD collaborates with embassies and consulates, as well as with interagency and international networks, to facilitate the efficient removal of aliens from the United States, provides nationwide post-order (POCR) guidance, implements policy and procedures, and is responsible for providing case management support for aliens subject to a final order of removal. *See* Declaration of Janese Mull, Unit Chief for the Removal Management Division (RMD), RIO Africa, Department of Homeland Security, Immigrations and Customs Enforcement, Enforcement and Removal Operations, doc. 25-1.

the Petitioner's September 24, 2026, Motion to Expedite Consideration. *See* doc. 36-3. Furthermore, ICE has paused third-country removal flights to the DRC- the only nation designated for Petitioner's removal- due to an active Ebola outbreak. *See* doc. 36-1, p. 3. Petitioner argues that his ongoing civil detention has no foreseeable end and seeks immediate release.

## II. LAW AND ANALYSIS

In *Zadvydas v. Davis*, 533 U.S. 678 (2001), and the extension and application of that decision by *Clark v. Martinez,* 543 U.S. 371 (2005), to aliens who are inadmissible, the United States Supreme Court adopted a six-month period for which the institutional detention of an alien, found within the United States and ordered removed pursuant to various provisions of Section 237(a) of the Act [8 U.S.C. § 1227(a)], is presumptively reasonable, and concluded that, "* * * once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Zadvydas*, 533 U.S. at 699. In the words of the Court:

> In answering that basic question, the habeas court must ask whether the detention in question exceeds a period reasonably necessary to secure removal. It should measure reasonableness primarily in terms of the statute's basic purpose, namely assuring the alien's presence at the moment of removal. Thus, if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute. In that case, of course, the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions. (Citations omitted). And if removal is reasonably foreseeable, the habeas court should consider the risk of the alien's committing further crimes as a factor potentially justifying confinement within that reasonable removal period.

*Zadvydas*, 533 U.S. at 699-700.

The Supreme Court clearly indicated that the lapse of the presumptive period does not mandate release and concluded that, "[t]o the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably

foreseeable future." *Zadvydas*, 533 U.S. at 701. The United States Court of Appeals for the Fifth Circuit has recognized that "[t]he [Supreme] Court's decision creates no specific limits on detention, however, 'as an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future'." *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006); *see also Agyei–Kodie v. Holder*, 418 F. App'x 317, 318 (5th Cir. 2011).

Thus, in order to state a claim for relief under the *Zadvydas* decision, an alien must: 1) establish post-removal order detention in excess of six months at the time of the filing of his or her petition; and 2) establish good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. *Id.*; *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002). Thereafter, "the Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701. To meet his burden under the second prong, an alien's claim must be supported by more than mere "speculation and conjecture." *Idowu v. Ridge*, 03-1293, 2003 WL 21805198, *4 (N.D. Tex. Aug. 4, 2003) (citing *Fahim v. Ashcroft*, 227 F. Supp. 2d 1359, 1366 (N.D. Ga. 2002)). In order to shift the burden to the Government, an alien must demonstrate that "the circumstances of his status" or the existence of "particular individual barriers to his repatriation" to his country of origin are such that there is no significant likelihood of removal in the reasonably foreseeable future. *Id*. If a petitioner fails to come forward with an initial offer of proof, the petition is ripe for dismissal. *Akinwale*, 287 F.3d at 1051.

***A. Length of Detention***

It is undisputed that Petitioner has been detained under a final order of removal, since May 6, 2025. Because his detention has exceeded the six-month presumptive threshold under *Zadvydas*, the court's inquiry must focus on whether his removal is currently foreseeable.

***B. Petitioner's Initial Burden***

The Court finds that Petitioner has met his initial burden. First, the BIA recently remanded his case to the immigration court. *See* Remand Order, attached to Petitioner's Motion to Expedite Consideration, doc. 36-2. If the Immigration Judge ("IJ") grants Petitioner's motion to reopen, removal proceedings will resume, allowing Petitioner to seek relief from removal as to the DRC—or any other country DHS designates. If the motion is denied, Petitioner retains the right to appeal to the BIA and subsequently to the Fourth Circuit. Because he is subject to a reinstated removal order, he will remain detained under 8 U.S.C. § 1231 during the entirety of those potentially prolonged proceedings. *See Johnson v. Guzman Chavez,* 594 U.S. 523, 526 (2021) (holding that § 1231, not § 1226, governs the detention of noncitizens subject to reinstated orders of removal).

Second, Petitioner is subject to an active stay of removal issued by the Fourth Circuit. *See* doc. 36-3. Docket sheets indicate his petition for review remains held in abeyance. More than five months after filing, the Fourth Circuit has not yet issued a briefing schedule, meaning the litigation is in its nascent stages. This court has held that a judicially imposed stay of removal is an operative factor precluding removal and rendering detention unforeseeable. *See Ramos Guido v. Patterson,* No. 6:26-CV-516 SEC P, 2026 WL 2131772, at *4 (W.D. La. July 7, 2026) (ordering release of petitioner when "Petitioner is subject to a stay of removal that will stretch on for an indefinite period of time" and so, the petitioner's "civil immigration detention is purposeless and will be so long as the stay of removal is in place" (quoting *Guerra Leon v. Noem,* No. 25-cv-1495, 2025 WL 4113562, at *3 (W.D. La. Oct. 30, 2025)), R. & R. adopted, 2026 WL 2127258 (W.D. La. July 23, 2026); *Alamrew v. Morgan*, No. 26-0871, 2026 WL 2546231, at *2 (W.D. La. Aug. 27, 2026) (recognizing that petitioner's stay of removal was an "additional factor showing that removal is not likely in the reasonably foreseeable future").

The timeline for these administrative procedures is indefinite, as they are inherently slow-moving and unpredictable. Supreme Court and Fifth Circuit precedents dictate that post-removal order detention is lawful only when it serves the auxiliary purpose of effectuating deportation. *See Tran v. Mukasey*, 515 F.3d 478, 485 (5th Cir. 2008) ("However, in light of the unqualified holdings of both *Zadvydas* and *Clark* that § 1231(a)(6) does not permit continued detention where removal is not reasonably foreseeable, this Court cannot establish an exception where none exists."); *Zadvydas*, 533 U.S. at 690; cf. *Phan v. Reno*, 56 F. Supp. 2d 1149, 1156 (W.D. Wash. 1999) ("Detention by the INS can be lawful only in aid of deportation."). Consistent with that precedent, this Court has previously held that where someone has a final order of removal but an "operative factor [is] precluding removal," release is appropriate. *Guerra Leon v. Noem*, No. 25-cv-1495, 2025 WL 4113562, *3 (W.D. La. Oct. 30, 2025); *see also Kera v. Patterson*, No. 6:26-cv-604, doc. 18, at 2 (W.D. La. Apr. 2, 2026) (finding petitioner likely to succeed on the merits where "parole has not been revoked"); *Benitez-Umanzor v. Jackson Parish Corr. Ctr.*, No. 3:26-cv-940, doc. 7, at 2 (W.D. La. Mar. 26, 2026) (same where "deferred action status remains effective").

In *Guerra Leon*, the Court found that though "Petitioner may still be subject to removal in the future if his deferred action status is terminated before its expiration or if it expires and is not renewed," in the meantime, the petitioner could not be removed and thus warranted release. 2025 WL 4113562, at *3. The same is true here. Petitioner is subject to a stay of removal that will stretch on for an indefinite period of time. Petitioner argues, and this Court agrees, that the stay of removal issued by another federal court has no bearing on its legal significance in this habeas case; his civil immigration detention is purposeless and will be so long as the stay of removal is in place. Because "Respondents fail to cite any authority that allow the removal of Petitioner" while his stay

is still in effect, he must be released. *Guerra Leon,* 2025 WL 4113562, at *3; *see also Zadvydas,* 533 U.S. at 699.

Respondents argue that because the delay is a result of Petitioner's own legal challenges, he cannot complain about the duration of his confinement. *See* doc. 24, p. 2. The Court rejects that argument. The government may not use the threat of indefinite detention to compel a noncitizen to waive statutory rights or "voluntarily" depart. *Castillo Arzuaga v. Warden, Baker Cty. Det. Center,* No. 3:26-cv-179, 2026 WL 1020868, at *3 (M.D. Fla. Apr. 15, 2026).

Furthermore, current jurisprudence flatly rejects Respondents' argument that a stay of removal moots a *Zadvydas* claim. *See* doc. 34, p. 2. Numerous courts have recently held that an active stay renders removal not reasonably foreseeable. *See, e.g., Alonzo v. Warden*, No. 2:26-CV-03719, 2026 WL 1475218 (D.N.J. May 27, 2026); *Palma v. Soto*, No. 26-5679, 2026 WL 1723864 (D.N.J. June 15, 2026); *Hien Duy Vu v. Blanche*, No. 3:26-CV-001416, 2026 WL 1696541 (M.D. Pa. June 11, 2026); *Souleymane v. Olsen*, No. 1:26-CV-00425, 2026 WL 785596 (S.D. Ind. Mar. 20, 2026). As noted in *Oyedeji v. Ashcroft*, 332 F. Supp. 2d 747, 753 (M.D. Pa. 2004), "[t]he price for securing a stay of removal should not be continuing incarceration." Immigration detention is restricted to narrow, non-punitive circumstances. Confinement cannot be used to penalize a noncitizen for pursuing available legal remedies. *See Zadvydas*, 533 U.S. at 689–90; *Adu v. Bickham*, No. 7:18-CV-00103, 2018 WL 6495068, at *3 (M.D. Ga. Dec. 10, 2018).

***C. Respondents' Burden***

Because Petitioner has met his initial showing, the burden shifts to Respondents to provide clear evidence that removal remains significantly likely in the reasonably foreseeable future. Respondents merely assert that DHS will execute the removal order immediately if the Fourth Circuit lifts its stay. This generalized statement is insufficient. Respondents have provided no

evidence that ICE has made progress toward effectuating removal to a country where Petitioner can actually be received. In their most recent filing of June 18, 2026, Respondents represent that the DRC has agreed to accept Petitioner for removal and that his removal was imminent prior to his filing a petition for review and requesting a stay of removal. *See* doc. 34, p. 1. Based on this, Respondents argue that Petitioner's removal in the reasonably foreseeable future is significantly likely in the event his petition for review is denied.

However, not only is the BIA presently determining whether it will allow Petitioner to seek relief from removal to the DRC, the Trump administration has recently confirmed via an administrative official and a DHS spokesperson in a public statement issued to the press that ICE has paused third-country removal to the DRC-the only country ICE has designated for Petitioner's removal in the last five months—because of an active Ebola outbreak. *See* Louisa Loveluck, Banished to Alien Lands: Trump's Secret Deportation Deals, The Guardian (Sept. 21, 2026), available at https://www.theguardian.com/us-news/ng-interactive/2026/sep/21/trump-deportation-deals (noting that third-country removal flights "to Kinshasa are on hold due to the country's Ebola outbreak"); Melody Schreiber, White House Pauses Removal of Detainees to DRC as Ebola Outbreak Widens, The Guardian (May 23, 2026), available at https://www.theguardian.com/world/2026/may/23/white-house-pauses-detainee-removal-drc-ebola; Myah Ward, Trump Administration Temporarily Pauses Deportation Flights to Congo amid Ebola Outbreak, Politico (May 21, 2026), available at https://www.politico.com/news/2026/05/21/trump-administration-temporarily-pauses-deportation-flights-to-congo-amid-ebola-outbreak-00932722. Indeed, on September 11, 2026, the Centers for Disease Control and Prevention extended an order suspending entry into the United States of foreign nationals who were physically present in the DRC, for an additional thirty days.

*See* Order: Suspending the Right to Introduce Certain Persons from Countries Where a Quarantinable Communicable Disease Exists, Ctr. for Disease Control (Sept. 11, 2026), available at https://www.cdc.gov/port-health/legal-authorities/evdorder.html.

As Petitioner argues, when the Fourth Circuit eventually lifts Petitioner's stay of removal, his removal is still not reasonably foreseeable because, in his more than 16 months of post-order detention, Respondents have failed to identify a country where he could presently be removed. Under nearly identical circumstances where a regional health crisis prevented repatriation and the government failed to initiate alternative removal tracks, this court has granted habeas relief. *See Rajabi v. Bondi*, No. 26-0922, 2026 WL 1999832, at *2-3 (W.D. La. June 12, 2026).

Because Petitioner's removal is completely unforeseeable, his ongoing detention violates the statutory constraints set forth in *Zadvydas*. Habeas relief is proper, and Petitioner must be released under appropriate supervision. The Court finds no need to address any other claim or challenge.

## III. CONCLUSION

For the reasons stated above, **IT IS ORDERED** that the petition is **GRANTED** and Petitioner be **RELEASED**, within seven (7) days, subject to supervision under regulations prescribed by the Attorney General."[2]

IT IS FURTHER ORDERED that all other pending motions are DENIED AS MOOT.

THUS DONE AND SIGNED in chambers this 15th day of October 2026.

**JERRY EDWARDS, JR.**
**UNITED STATES DISTRICT JUDGE**

[2] 8 U.S.C. § 1231(a)(3).